IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06cr5

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| RALPH ANTHONY ROSEBORO ) | |
| _____ ) | |

**THIS MATTER** is before the Court upon motion of the defendant, Ralph Anthony Roseboro, to suppress incriminating statements that he made to Detective Tracy Strickland on October 13, 2004, on the grounds that the statements were made during a custodial interrogation without the benefit of <u>Miranda</u> warnings. (Doc. No. 18).  At its June 20, 2006 evidentiary hearing, the Court orally denied the defendant's motion to suppress the entire conversation, finding that he had initiated the conversation with Strickland.  The Court, however, took under advisement whether certain portions of the conversation (specifically those transcribed on page three, line 40 through page four, line 13 of the transcript) should be suppressed.[1]

This order now addresses the portions of the conversation taken under advisement.  Based on the record before it, the Court finds that only lines 7-13 on page four of the transcript of the telephone conversation between the defendant and Detective Strickland will be excluded from use in the government's case-in-chief on the grounds that this portion of the conversation constituted custodial interrogation.  The reasons for the Court's decision follow, beginning with its findings of fact.

---

[1]The entire transcript is attached to this order as Exhibit One.  The relevant portions the conversation incorporated herein appear as they were originally transcribed, including typographical and punctuation errors.

1

# FACTUAL FINDINGS[2]

The allegations comprising this criminal matter are as follows. On October 6, 2004, the defendant, a convicted felon, took a Charter Arms .38 caliber revolver from the Gastonia, North Carolina home of his friend, Belinda Owens. Ms. Owens called the police and reported that her revolver had been stolen. The following day, the defendant got into an altercation with Archie Catoe, an acquaintance of defendant residing in Clover, South Carolina, after Mr. Catoe discovered the defendant breaking into his home. In the course of a struggle, Mr. Catoe shot the defendant in the stomach with a .22 caliber rifle. Notwithstanding his stomach wound, the defendant got in his van and returned to Gastonia, eventually collapsing in front of a residence. The defendant was taken to the hospital. Law enforcement officers discovered four rounds of .380 caliber ammunition on the spot where the defendant had collapsed, and recovered Ms. Owens' Charter Arms .38 caliber revolver and a Bersa .380 caliber pistol from under a nearby shed.

When the defendant was discharged from the hospital on October 13, 2004, he was arrested by Detective McCabe of the Gastonia Police Department. McCabe had interviewed the defendant the day before about the firearm taken from Ms. Owens. The defendant was taken to the police station, although he was not <u>Mirandized</u>. Thereafter, Detective McCabe, in the presence of the defendant, called to notify Detective Tracy Strickland of the York County Sherriff's Office that the defendant was in custody. Detective Strickland had outstanding warrants on the defendant with respect to the alleged break-in of the Catoe house. When the defendant heard that Detective Strickland was on the phone, the defendant asked to speak with him. (Detective Strickland and the

---

[2]The Court incorporates into this order the findings of fact and legal conclusions discussed in its June 20, 2006 oral order.

defendant had grown-up together.)  Detective McCabe handed the phone to the defendant, and the defendant began conversing with Strickland.  Their conversation was recorded, although the police did not inform the defendant of this.  From the tone and tenor of the conversation it is clear that the defendant was eager to speak with Strickland, intent on talking his way past legal difficulties.  Most of the detective's end of the conversation is laced with neutral responses such as "ok," and repeated assurances that as soon as the defendant returned to South Carolina, they would "sit down and talk."  Near the end of the conversation, however, the defendant asks about the ".380."  That portion of the conversation reads:

> Roseboro:   You got that 380 too right?
>
> Strickland: Yes sir.
>
> Roseboro:   Ok, that ain't mine either.
>
> Strickland: What Where'd it come from?
>
> Roseboro:   That's my nephews.
>
> Strickland: Your nephews?  And you had it up there?
>
> Roseboro:   It was in my clothes bag
>
> Strickland: In your clothes bag?
>
> Roseboro:   Yeah, yeah it was in the bag with my clothes but he hadn't come picked it up.
>
> Strickland: Uh huh
>
> Roseboro:   See when he was playing basketball the other week
>
> Strickland: Uh huh
>
> Roseboro:   He left it up there.
>
> Strickland: Alright but you didn't have it in the house with you?

3

| | |
|---|---|
| Roseboro: | No, shit no |
| Strickland: | Ok |
| Roseboro: | No |
| Strickland: | Alright but it was in the van when you was parked outside? |
| Roseboro: | Yeah, a bunch of clothes. I was getting my clothes and stuff. That's the only reason I went over there to get my tool box and all that there. |

## ANALYSIS

At the suppression hearing, the Court found the evidence unequivocally pointed to the defendant as the initiator of the conversation. Thus, the Court found that the conversation, as described throughout the first three pages of the transcript (Tr. at 1:1-3:39), was not a custodial interrogation. The issue presently before the Court is whether the conversation about the .380 pistol (Tr. at 3:40-4:13), at which point Detective Strickland is no longer simply providing neutral responses to the defendant's statements, shifted the encounter from a defendant-initiated dialogue to a law enforcement interrogation. Based on the record before it, the Court finds that when Detective Strickland first asked the defendant about the .380 (Tr. at 3:40-4:06), he merely was seeking to clarify the defendant's own, spontaneous, statements, and the conversation had not become a custodial interrogation. However, the Court finds that when Detective Strickland asked the defendant whether the gun was "in the van when you was parked outside," (Tr. at 4:07-4:13) the conversation became a custodial interrogation

First, the Court finds that it is clear that when the defendant asked whether the police had the .380 pistol, the detective merely was seeking to clarify the defendant's own, spontaneous, statements. The defendant asked whether the police had "got the 380," and the detective simply affirmed. When

4

the defendant denied owning the firearm saying, "that [the .380] ain't mine either," Detective Strickland sought to clarify that comment by asking, "What, Where'd it come from?" The defendant said, "That's my nephews," and the detective asked, "Your nephews? And you had it up there?" The defendant then went on to explain how the nephew's firearm ended up in his van. Statements, such as those made by the defendant, made in response to questions asked by law enforcement are not the result of interrogation where the officer is only seeking clarification of the defendant's statement. See United States v. Chipps, 410 F.3d 438, 444-45 (8th Cir. 2005) (citing Butzin v. Wood, 886 F.2d 1016, 1018 (8th Cir. 1989)). Thus, as the detective merely asked the defendant to clarify his spontaneous statements Miranda warnings were not necessary.

However, the Court finds it equally clear that when Detective Strickland asked the defendant, "Alright, but you didn't have [the firearm] in the house with you?" the encounter went beyond clarification of spontaneous statements. During the suppression hearing, Detective Strickland was asked why he asked the defendant about having the firearm inside the house. Detective Strickland said he did this because if the defendant had the pistol inside Archie Catoe's residence, then it would have been an enhanced offense. The detective's stated intention suggests more than mere clarification. The detective also went beyond mere clarification of spontaneous statements when he asked, "Alright but it was in the van when you was parked outside?" The Court finds that these two questions were interrogative, and constituted custodial interrogation for Miranda purposes, and, accordingly should be suppressed.

**THEREFORE, IT IS HEREBY ORDERED** that the defendant's motion to suppress is **DENIED IN PART**, **AND GRANTED IN PART.** Lines 7-13 on page four of the transcript of the

October 13, 2004 telephone conversation between the defendant and detective Strickland will be excluded from trial.

The Clerk is directed to certify copies of this order to the defendant, counsel for the defendant, to the United States Attorney, the United States Marshals service, and the U.S. Probation office.

Signed: June 29, 2006

Robert J. Conrad, Jr.
Chief United States District Judge